People v Rodriguez (2018 NY Slip Op 05717)





People v Rodriguez


2018 NY Slip Op 05717


Decided on August 9, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 9, 2018

109220

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ALEXIS RODRIGUEZ, Appellant.

Calendar Date: June 4, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Aarons, JJ.


G. Scott Walling, Slingerlands, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from a judgment of the County Court of Schenectady County (Sypniewski, J.), rendered January 18, 2017, convicting defendant upon his plea of guilty of the crime of assault in the first degree.
In the fall of 2014, defendant and his family were the victims of a home invasion burglary that occurred as the result of a dispute between defendant and Jose Sanchez over a minivan. Sanchez and three accomplices, one of whom was later identified as Victor Marin (also known as Pito Hulk), were armed with weapons and, after threatening defendant, his wife and his children, left defendant's home with the minivan. Before leaving, Sanchez and Marin threatened to kill everyone in the house if the incident was reported and the police were not
notified. Rather, in November 2014, after defendant spotted the minivan nearby, he and three accomplices went to Sanchez's residence armed with weapons. Upon their arrival, defendant confronted Sanchez at gunpoint and defendant's accomplices began fighting with one of Sanchez's brothers, inflicting stab wounds. One of defendant's accomplices thereafter stabbed Sanchez, another shot him multiple times and, finally, after Sanchez fell to the ground, defendant proceeded to shoot him several more times, with fatal results, before fleeing the scene.
Defendant was ultimately arrested in Maryland and charged in an indictment with murder in the second degree and two counts of assault in the first degree. Thereafter, the People tendered a plea bargain proposal to defendant whereby he would (1) plead guilty to one count of murder in the second degree with a proposed sentence of 20 years to life in prison, (2) plead [*2]guilty to one count of assault in the first degree with a proposed sentence of 20 years to life in prison and five years of postrelease supervision, and (3) cooperate fully and truthfully with the District Attorney's office. Defendant subsequently accepted this plea bargain proposal, pleading guilty to murder in the second degree and assault in the first degree and waived his right to appeal, both orally and in writing. During the plea allocution, defendant, his counsel and the People executed a written cooperation agreement, which was ordered sealed, requiring him to "cooperate completely and truthfully with law enforcement authorities, including the police and the District Attorney's [o]ffice, on all matters in which his cooperation is requested." This agreement further provided that, if defendant so cooperated with the People, his two sentences would run concurrently; if he did not, they would run consecutively.
Defendant was thereafter sentenced to 20 years to life in prison upon his conviction of murder in the second degree with the sentencing on the assault conviction adjourned pending defendant's compliance with the cooperation agreement. In accordance therewith, defendant was requested to testify for the prosecution at Marin's trial for burglary in the first degree arising from the home invasion. Defendant refused to testify and, instead, moved to vacate his guilty plea, contending that it was not knowingly and voluntarily made. He later supplemented the motion and raised the claim of ineffective assistance of counsel. County Court denied defendant's motion and sentenced him upon his conviction of assault in the first degree to 20 years in prison, followed by five years of postrelease supervision, to run consecutively to his sentence on the murder conviction. Defendant now appeals.
Defendant contends, among other things, that his failure to testify at Marin's trial did not constitute a violation of the cooperation agreement warranting the imposition of consecutive sentences. Specifically, he asserts that the agreement only required him to cooperate in the prosecution of the accomplices who were involved in Sanchez's murder and the assault of Sanchez's brother, and did not impose upon him any such obligation with respect to the individuals, like Marin, who were involved in the home invasion [FN1]. We disagree. Significantly, the cooperation agreement that defendant entered into did not limit his obligation to cooperate with the People solely with respect to Sanchez's murder and the assault of Sanchez's brother, but rather applied to "all matters in which his cooperation [was] requested." Contrary to defendant's contention, this language is not fatally overbroad when considered in the context of what was asked of defendant and the underlying events that set in motion his fatal encounter with Sanchez.
The record demonstrates that defendant shot and murdered Sanchez in direct retaliation for the home invasion and burglary of his residence and, therefore, these two events (i.e., the burglary and the murder) are inextricably intertwined based upon participants, timing and general location. In turn, by agreeing to the subject cooperation agreement as a condition of his negotiated plea agreement, defendant was keenly aware of his cooperation obligations — particularly since he had previously cooperated with law enforcement with respect to Marin's burglary investigation and he and his family were the alleged victims thereof — yet made a calculated and knowing decision not to honor the same by declining to testify at Marin's trial. County Court, meanwhile, specifically informed defendant, both when he entered his initial guilty plea and at certain subsequent court appearances, about the potential for the imposition of consecutive sentences should he fail to comply with the conditions of the plea agreement. Defendant indicated that he understood the potential consequences of his decision and he [*3]nevertheless elected not to comply therewith, such that the People were justified in seeking, and County Court was justified in imposing, consecutive sentences. Accordingly, we find no error by County Court in imposing consecutive sentences for defendant's convictions of murder in the second degree and assault in the first degree based upon his failure to comply with the terms of the cooperation agreement (see People v Hicks, 98 NY2d 185, 188-189 [2002]; People v McMillan, 55 AD3d 1064, 1066 [2008], lvs denied 11 NY3d 899, 900 [2008]; People v Kirkland, 53 AD3d 673, 674 [2008], lv denied 11 NY3d 790 [2008]; People v Nicholson, 50 AD3d 1397, 1398 [2008], lv denied 11 NY3d 834 [2008]; see also People v Russell, 143 AD3d 1188, 1189-1190 [2016]; People v Bucknor, 116 AD3d 1233, 1234 [2014]). We are similarly unpersuaded that the imposition of an enhanced sentence was harsh and excessive as we perceive no abuse of discretion or extraordinary circumstances that would warrant a modification of the sentence in the interest of justice (see People v Bonelli, 41 AD3d 972, 974 [2007], lv denied 9 NY3d 921 [2007]).
McCarthy, J.P., and Devine, J., concur.




Lynch, J. (dissenting).


We respectfully dissent. Defendant's core argument is that his refusal to testify at Victor Marin's trial did not constitute a violation of the cooperation agreement. By its terms, the cooperation agreement provided that "[d]efendant will cooperate completely and truthfully with law enforcement authorities, including the police and District Attorney's [o]ffice, on all matters in which his cooperation is requested, including but not limited to the prosecution [of defendant's accomplices] on charges related to the murder of Jose Sanchez and the assault of [Sanchez's brother]" (emphasis added). Defendant further verified his grand jury testimony and agreed to look at a photo array in order to identify his accomplices, whom he knew through their nicknames. The People maintain, and the majority agrees, that the underscored language, in context, required defendant to testify at Marin's trial and that his refusal to do so breached the cooperation agreement. Upon careful review of the language of the cooperation agreement, and in light of the circumstances under which it was executed, we find that defendant's argument has merit. Noticeably absent from the agreement is any language specifically referring to the home invasion or to Marin. This omission is consistent with the main focus of the police investigation, which was to identify and prosecute the accomplices involved in the murder and assault of Sanchez and his brother.
We recognize that defendant identified Marin as a participant in the home invasion in his December 2014 statement given to the police following his arrest, in a photo array and in his January 26, 2015 testimony before the grand jury. Although it is unclear from the record why the cooperation agreement was not signed until November 2015,[FN1] it is significant that the prosecutor set forth the terms of the arrangement that had been reached as a prelude to defendant's grand jury testimony. Specifically, the prosecutor explained that an arrangement had been reached with defendant "with respect to [the] charges that arose with respect to this homicide investigation." He then set forth the terms of the agreement, which mirrored the plea offer set forth in the [*4]subsequent November 2015 cooperation agreement, i.e., defendant would plead guilty to one count of murder in the second degree and one count of assault in the first degree, with a sentence of 20 years to life on the murder conviction and a concurrent 20-year sentence on the assault conviction "if [defendant] complete[d] [his] cooperation agreement." The prosecutor then added that "all of the benefits [defendant] would receive are conditioned on the fact that [defendant] will tell [the People] the entire truth about this matter" (emphasis added). He elaborated that defendant would have to cooperate "in any proceedings that follow, . . . [which] can include further [g]rand [j]ury sessions, any pretrial hearings, and any trials." The prosecutor also explained to the grand jury that the ensuing testimony concerning the home invasion was relevant only as to the motive behind the murder of Sanchez and the assault on Sanchez's brother. Cumulatively, these conditions speak to defendant's cooperation in the homicide event.
Correspondingly, at no time during the plea proceedings in which the cooperation agreement was discussed was any mention made that defendant's obligation to cooperate extended to the prosecution of Marin for the home invasion. The significance of having such a requirement cannot be overstated, for defendant informed the police at the outset in his December 2014 statement that both Sanchez and Marin had threatened to kill his family if anyone informed the police about the home invasion. In this context, the generic, open-ended clause of the cooperation agreement — signed 10 months after defendant had already testified before the grand jury under the parameters outlined above that focused on the homicide event — cannot fairly be construed as compelling defendant to testify at Marin's trial. He refused to do so over concerns for the safety of his family even when confronted with County Court's admonition that a failure to cooperate exposed him to an additional 20 years in prison. Under the circumstances presented, it is our view that defendant did not violate the cooperation agreement by refusing to testify at the Marin trial and that consecutive sentences should not have been imposed (compare People v Russell, 143 AD3d 1188, 1190 [2016]; People v Bucknor, 116 AD3d 1233, 1234 [2014]).
Aarons, J., concurs.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: We note that defendant's claim is not precluded by his waiver of the right to appeal (see People v Russell, 143 AD3d 1188, 1189 [2016]; People v Bucknor, 116 AD3d 1233, 1234 [2014]).

Footnote 1: Notably, the record includes a draft of the cooperation agreement dated January 21, 2015 (i.e., five days before defendant's grand jury appearance), which includes all of the terms of the cooperation agreement ultimately signed in November 2015.